# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

## MOTION INFORMATION STATEMENT

**Docket Number(s):** 25-2652

**Motion for:** Motion to Expedite Appeal

**Caption [use short title]**

Set forth below precise, complete statement of relief sought:

(1) Expedite the briefing schedule to have Appellants' opening brief be due by December 8, 2025, Appellees' response brief be due by January 7, 2026, and Appellants' reply brief be due by January 28, 2026. (2) Expedite oral argument.

Petróleos de Venezuela, S.A. v. MUFG Union Bank, N.A.

**MOVING PARTY:** Petróleos de Venezuela, S.A., PDVSA Petróleo, S.A., and PDV Holding, Inc.
**OPPOSING PARTY:** MUFG Union Bank, N.A. and GLAS Americas LLC

[✓] Plaintiff   [ ] Defendant
[✓] Appellant/Petitioner   [ ] Appellee/Respondent

**MOVING ATTORNEY:** Kurt W. Hansson
**OPPOSING ATTORNEY:** Paul A. Paterson

[name of attorney, with firm, address, phone number and e-mail]

Paul Hastings LLP
200 Park Avenue, New York, NY 10166
212-318-6000, kurthansson@paulhastings.com

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas, New York, NY 10019
212-373-3581, ppaterson@paulweiss.com

**Court-Judge/Agency appealed from:** Southern District of New York, Judge Katherine P. Failla

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
[✓] Yes   [ ] No (explain):_____

Opposing counsel's position on motion:
[ ] Unopposed   [✓] Opposed   [ ] Don't Know

Does opposing counsel intend to file a response:
[ ] Yes   [ ] No   [✓] Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**
Has this request for relief been made below?   [ ] Yes [ ] No
Has this relief been previously sought in this court?   [ ] Yes [ ] No
Requested return date and explanation of emergency: _____

Is oral argument on motion requested?   [ ] Yes [✓] No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?   [ ] Yes [✓] No   If yes, enter date: _____

**Signature of Moving Attorney:**

/s/ Kurt W. Hansson   **Date:** 10/29/2025   Service by: [✓] CM/ECF   [ ] Other [Attach proof of service]

Form T-1080 (rev.12-13)

25-2652

# In the United States Court of Appeals for the Second Circuit

PETRÓLEOS DE VENEZUELA, S.A., PDVSA PETRÓLEO, S.A., AND PDV HOLDING, INC.,

*Plaintiffs-Counterdefendants-Appellants,*

v.

MUFG UNION BANK, N.A. AND GLAS AMERICAS LLC,

*Defendants-Counterclaimants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**MOTION TO EXPEDITE APPEAL**

KURT W. HANSSON
JAMES L. FERGUSON
ZACHARY D. MELVIN
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

IGOR V. TIMOFEYEV
PAUL HASTINGS LLP
2050 M Street, N.W.
Washington, D.C. 20036
(202) 551-1700

*Counsel for Appellants
Petróleos de Venezuela, S.A. and
PDVSA Petróleo, S.A.*

MICHAEL J. GOTTLIEB
WILLKIE FARR & GALLAGHER LLP
2029 Century Park East
Los Angeles, CA 90067
(310) 855-3111

SAMUEL G. HALL
KRISTIN E. BENDER
WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W. #100
Washington, D.C. 20006
(202) 303-1000

AARON E. NATHAN
WILLKIE FARR & GALLAGHER LLP
787 7th Avenue
NEW YORK, NY 10019
(212) 728-8000

*Counsel for Appellant PDV Holding, Inc.*

Pursuant to Federal Rule of Appellate Procedure 27 and Local Rule 27.1, Appellants Petróleos de Venezuela, S.A. ("PDVSA"), PDVSA Petróleo, S.A., and PDV Holding, Inc. ("PDVH") (collectively, the "PDVSA Parties") respectfully request that this Court expedite the briefing and argument in this appeal. The main issue on appeal is whether the bonds issued by the Maduro-controlled PDVSA in 2016 ("the 2020 Notes"), purportedly secured by PDVH's pledge (the "Pledge Agreement") of a controlling interest in CITGO Holding, Inc., are valid despite the lack of approval by the Venezuelan National Assembly—the country's legislature.

CITGO Holding is the single significant asset of PDVH and the parent company of CITGO Petroleum Corporation—the fifth-largest U.S.-based refiner and the foreign "crown jewel" of Venezuela's national oil industry. Instead of authorizing that debt issuance (as is required under the Venezuelan constitution), the National Assembly enacted a resolution "categorically rejecting" any transaction purporting to pledge a controlling interest in CITGO Holding. When this case was previously on appeal, this Court vacated the district court's earlier ruling that New York law, rather than Venezuelan law, governed the validity of the transaction documents. *Petroleos De Venezuela S.A. v. MUFG Union Bank, N.A.*, 106 F.4th 263 (2d Cir. 2024). On remand, the district court considered the parties' arguments about Venezuelan law and—declining to credit sufficiently the Republic of Venezuela's statements about the meaning of its own constitution—held that the

1

2020 Notes, along with the Indenture, the Pledge Agreement, and the Guaranty, were valid.

The validity of the 2020 Notes is of critical importance in the parallel proceeding in the District of Delaware, *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, No. 17-mc-151 (D. Del.), which involves a judicial sale of the PDVH shares in an effort to satisfy outstanding debt of PDVSA and Venezuela. The leading bid in *Crystallex* is premised on the assumption that the 2020 Notes are valid, and it would pay $2.125 billion to the 2020 bondholders (Appellees here) for a release of the pledge securing the notes. If the 2020 Notes are adjudged invalid, however, approval of that bid will effect "a fundamental injustice," as the *Crystallex* court itself acknowledged.

The issue is of great importance not only to the PDVSA Parties, but also to Venezuela. The goal of the judicial auction in *Crystallex* is to repay Venezuela's debts that are no longer subject to appeal. Yet the current leading bid in *Crystallex* threatens to divert over $2 billion of value as a payment for a pledge whose validity has not been conclusively adjudicated. If the current bid in *Crystallex* is approved and consummated before this Court renders a conclusive determination as to the validity of the 2020 Notes and related pledge, over $2 billion would be paid to creditors who may not hold a valid claim, instead of reducing PDVSA's liability for Venezuela's debts. Moreover, that process would result in a loss of CITGO

Petroleum—one of Venezuela's strategic national assets—to a buyer whose bid prevails in large part because of an agreement that settles debt the democratically elected Venezuelan government has consistently disputed.

This Court can avoid these undesirable consequences by a modest expedition of the briefing schedule and argument. The PDVSA Parties propose that this Court adopts the default briefing schedule under Federal Rule of Appellate Procedure 31(a): The PDVSA Parties would file their opening brief 40 days from today, by December 8, 2025; Appellees would file their response brief 30 days thereafter, by January 7, 2026; and the PDVSA Parties would file their reply brief 21 days afterwards, by January 28, 2026. This briefing schedule would provide the necessary expedition while avoiding prejudice to Appellees. The PDVSA Parties would also request that the Court set this appeal for argument as promptly as the Court's schedule and considerations of judicial efficiency permit.

Appellees oppose this motion.

## BACKGROUND

This appeal arises from a 2016 bond exchange offer that sought to exchange PDVSA-issued notes due in 2017 for notes due in 2020. *Petróleos De Venezuela S.A. v. MUFG Union Bank, N.A.*, 106 F.4th 263, 265 (2d Cir. 2024). At the time, Venezuela's executive branch and state-owned companies, such as PDVSA, were controlled by the increasingly authoritarian regime of Nicholas Maduro. By

contrast, a coalition of opposing parties had a majority in the democratically elected National Assembly (Venezuela's legislature). *Id.* As the 2017 notes were unsecured, to encourage noteholders to exchange their notes, the Maduro regime offered to secure the 2020 Notes with a pledge of 50.1% of PDVH's equity interest in CITGO Holding—the parent company of CITGO Petroleum, a major U.S.-based oil refiner. *Id.*

Under Articles 150 and 187(9) of the Venezuelan Constitution, any "national public interest contract" with a foreign non-domiciled entity requires the approval of the National Assembly. *Id.* at 266. In May 2016, in response to the Maduro regime's attempts to evade this restriction, the National Assembly passed a resolution reaffirming its constitutional prerogative and reminding those contracting with the Venezuelan state that any national public interest contracts executed without its approval would be "null and void in their entirety." *Id.*

Upon learning of the Maduro regime's intention to pledge the majority control of CITGO Petroleum, the National Assembly in September 2016 enacted a resolution expressly identifying the proposed exchange offer as a transaction subject to legislative approval and "reject[ing] categorically" the proposed pledge of the CITGO Holding shares as a guarantee for the new debt notes. *Id.* The Maduro regime went forward with the exchange notwithstanding the National Assembly's disapproval. *Id.*

In January 2019, following a rigged presidential election, the National Assembly refused to recognize Maduro's continuing legitimacy and declared the National Assembly President, Juan Guaidó, as the Interim President of Venezuela. *Id.* The United States immediately recognized Guaidó as Venezuela's legitimate leader, and reiterated its support for the National Assembly as "the 'only legitimate branch of government duly elected by the Venezuelan people.'" *Id.* The Guaidó administration then appointed an *ad hoc* board of directors of PDVSA, thereby freeing PDVSA and its subsidiaries from Maduro's control (at least so far as U.S. law is concerned). *Jimenez v. Palacios*, 250 A.3d 814, 825 (Del. Ch. 2019). In October 2019, the *ad hoc* board of PDVSA, alongside PDVSA Petróleo and PDVH, commenced this action seeking a declaration that the 2020 Notes and the accompanying transaction documents are invalid.

In October 2020, the district court granted summary judgment to Appellees, ruling that New York law (rather than Venezuelan law) governed the 2020 Notes' validity and that the act of state doctrine did not apply. *Petroleos De Venezuela*, 106 F.4th at 267. On appeal, this Court certified questions of New York choice of law to the New York Court of Appeals. *Id.* The New York Court of Appeals unanimously agreed that Venezuelan law governs the question of the 2020 Notes' validity. *Id.* at 267-68. Accordingly, in July 2024, this Court vacated the district court's decision and remanded for consideration of Venezuelan law. *Id.* at 270.

Following remand, the parties submitted supplemental briefing (including additional expert reports and evidence) on the issues of Venezuelan law and act of state. The National Assembly (acting as the legitimate government of the Republic of Venezuela) filed an *amicus* brief explaining why, under the proper construction of Venezuelan law, the lack of National Assembly authorization renders the 2020 Notes invalid. District Court Dkt. No. 326-1. At the district court's invitation, the United States submitted a statement of interest reaffirming that it views the National Assembly as the legitimate government of Venezuela and urging the district court to give the National Assembly's views regarding Venezuelan law "the same 'respectful consideration' … that would be due to any foreign sovereign under *Animal Science Products, Inc. v. Hebei Welcome Pharmaceutical Co.*, 585 U.S. 33, 36 (2018)." District Court Dkt. No. 393 at 2.

On September 18, 2025, the district court issued a decision concluding that the 2020 Notes are valid under Venezuelan law and that the act of state doctrine does not apply. District Court Dkt. No. 397. The district court instructed the parties to submit a joint proposal on how the case should proceed. In response to the court's request, on October 16, 2025, the parties informed the court that it may enter a partial final judgment under Federal Rule of Civil Procedure 54(b). While Appellees suggested that the court delay entry of that judgment until it decides the issue of attorneys' fees, the PDVSA Parties requested a prompt entry of the judgment, so as

6

to allow for immediate appellate review. District Court Dkt. No. 400. The district court agreed with the PDVSA Parties, and entered a Rule 54(b) judgment the following day, October 17, 2025. District Court Dkt. No. 402. The PDVSA Parties appealed to this Court later that day. District Court Dkt. No. 403.[1] The Court docketed this appeal on October 23, 2025. *See* Dkt. No. 6.

In the parallel *Crystallex* litigation, the U.S. District Court for the District of Delaware is conducting a judicially mandated auction of PDVSA's shares in PDVH to satisfy various creditor claims against PDVSA and Venezuela. In October 2025, the Special Master appointed by the Delaware district court recommended approval of a bid from Amber Energy Inc. ("Amber"), which includes a transaction support agreement ("TSA") with the holders of the 2020 Notes. District Court Dkt. No. 395 at 1. Under the TSA, the holders of the 2020 Notes who agree to tender them to Amber (provided they hold at least 66% of the outstanding bonds) would receive $2.125 billion in exchange for releasing the pledge of the CITGO Holding shares that is at issue in this appeal. *See Crystallex Int'l Corp v. Bolivarian Republic of Venezuela*, No. 17-mc-00151, ECF No. 2123-1, Ex. F at 799-833 (D. Del. Aug. 29, 2025). The PDVSA Parties (as well as the Republic of Venezuela) objected to the Special Master's recommended approval of that bid on numerous grounds, including

---

[1] The PDVSA Parties re-filed their notice of appeal on November 20, 2025, to correct a ministerial electronic filing error. *See* District Court Dkt. No. 404.

7

that, in the absence of a conclusive determination by this Court that the 2020 Notes are valid, the bid would provide an unfair windfall to the 2020 Bondholders without reducing PDVSA's indebtedness to valid creditors. The *Crystallex* court held a hearing on the recommended bid on October 21, 2025, and the matter remains pending.

## ARGUMENT

This Court should expedite this appeal. This Court's decision as to whether the 2020 Notes, along with the Indenture, the Pledge Agreement, and the Guaranty, are valid under Venezuelan law and the act of state doctrine is critical to the issues pending before the District of Delaware in *Crystallex*. The currently recommended Amber bid in *Crystallex* is premised on the assumption that the 2020 Notes and related pledge of CITGO Holding shares are valid, and it proposes to pay the 2020 Bondholders (Appellees here) a sum of $2.125 billion in exchange for the release of the pledge and the transfer of the CITGO Holding shares. If, however, the 2020 Notes and the Pledge Agreement are invalid—as the PDVSA Parties and the Republic of Venezuela have consistently argued—the central pillar of the Amber bid would be fatally undermined. The Amber bid is more than $2 billion lower than the competing bid in *Crystallex,* and both Amber and the 2020 Bondholders sought to justify that discrepancy by insisting that the bid ensures the certainty of closing (because it credits the 2020 Bondholders' claim to a controlling share of CITGO

8

Holding) and supposedly provides value to PDVSA (because, according to Amber's representations, it would release PDVSA from its debt obligation to those 2020 bondholders who would tender their notes to Amber). *See* Amber Energy Inc.'s Post-Trial Br., *Crystallex*, No. 17-mc-00151, ECF No. 2382, at 15-17 (D. Del. Oct. 9, 2025); The Venezuela Parties' Post-Hr'g Opening Br., *Crystallex*, No. 17-mc-00151, ECF No. 2374-1, at 33 (D. Del. Oct. 8, 2025). This Court's ruling on the validity of the 2020 Notes would inform the Delaware court's decision on whether the Amber bid could be confirmed. As the *Crystallex* court itself observed, "it would be a fundamental injustice" to approve a final bid that places "substantial value on settlement of the 2020 Bondholders' litigation" if subsequent events demonstrate that "the 2020 Bondholders have no rights to CITGO Holding." Order, *Crystallex*, No. 17-mc-00151, ECF No. 1741 at 7-8 (D. Del. Apr. 21, 2025).

Moreover, this case implicates important national interests of both Venezuela and the United States. CITGO Petroleum is one of the largest oil refiners in the United States and a major strategic asset of Venezuela. As the U.S. State Department previously informed the district court, PDVSA's loss of CITGO Petroleum "would be detrimental to U.S. policy" with respect to Venezuela. District Court Dkt. No. 213-1 at 2. Any transfer of CITGO Petroleum away from PDVSA to another entity as part of a court-supervised sales process should not be made based on disputed debt obligations whose validity has not been conclusively adjudicated. As the State

9

Department explained, such an outcome "would be greatly damaging and perhaps beyond recuperation" both to the priorities of the National Assembly-led government and to U.S. foreign policy goals in Venezuela. *Id.* at 3. Treating as valid the Maduro regime's decision to mortgage CITGO Petroleum in disregard of the National Assembly's express condemnation would reward the Maduro regime, which—as the State Department observed recently—has "ravaged Venezuela's economy [and] exploited and squandered the Venezuelan people's assets, including Petróleos de Venezuela, S.A. (PdVSA)." District Court Dkt. No. 393-1 at 1. And it would be equally damaging to the integrity of court-supervised sales of foreign sovereign assets.

The PDVSA Parties propose that this Court adopt the default briefing schedule under Federal Rule of Appellate Procedure 31(a): The PDVSA Parties would file their opening brief 40 days from today, by December 8, 2025; Appellees would file their response brief 30 days thereafter, by January 7, 2026; and the PDVSA Parties would file their reply brief 21 days afterwards, by January 28, 2026.[2]

Appellees would not be prejudiced by this schedule. The case has been extensively litigated for years, and the parties are familiar with the issues and the record. The proposed briefing schedule would not compromise the ability of any

---

[2] In order to further expedite the appeal, contemporaneously with this motion, the PDVSA Parties are filing their Pre-Argument Statement and Transcript Information Form, which are not due until November 6, 2025. *See* Local R. 12.1(a).

10

party to present its arguments, especially since, under the PDVSA Parties' proposal, Appellees would be provided the full briefing period allowed under the federal appellate rules. The PDVSA Parties would also not object to reasonable adjustment of the briefing dates if needed to accommodate counsel's preexisting plans around the intervening Christmas and New Year's holidays. In fact, the PDVSA Parties extended that offer to Appellees prior to filing this motion.

The PDVSA Parties further request that this Court expedite oral argument in this appeal, to the extent consistent with the Court's overall argument schedule and considerations of judicial efficiency.

## CONCLUSION

For the reasons stated above, Appellants respectfully request that the Court enter an order expediting the briefing schedule and oral argument in this appeal.

Dated: October 29, 2025         Respectfully submitted,

*/s/ Kurt W. Hansson*
Kurt W. Hansson
James L. Ferguson
Zachary D. Melvin
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
kurthansson@paulhastings.com
jamesferguson@paulhastings.com
zacharymelvin@paulhastings.com

Igor V. Timofeyev
Paul Hastings LLP
2050 M Street, N.W.
Washington, D.C. 20036
(202) 551-1700
igortimofeyev@paulhastings.com

*Counsel for Appellants Petróleos de Venezuela, S.A., and PDVSA Petróleo, S.A.*


*/s/ Michael J. Gottlieb*
Michael J. Gottlieb
Willkie Farr & Gallagher LLP
2029 Century Park East
Los Angeles, CA 90067
(310) 855-3111
mgottlieb@willkie.com

Samuel G. Hall
Kristin E. Bender
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, D.C. 20006
shall@willkie.com
kbender@willkie.com

Aaron E. Nathan
Willkie Farr & Gallagher LLP
787 7th Avenue
New York NY 10019
anathan@willkie.com

*Counsel for Appellant PDV Holding, Inc.*

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I certify the following:

1. This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A). The motion contains 2,533 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f).

2. This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rules of Appellate Procedure 32(a)(6). The motion has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: October 29, 2025

                                          */s/ Kurt W. Hansson*
                                          Kurt W. Hansson
                                          Paul Hastings LLP
                                          200 Park Avenue
                                          New York NY 10166