# 25-2652

## In the United States Court of Appeals for the Second Circuit

PETRÓLEOS DE VENEZUELA, S.A., PDVSA PETRÓLEO, S.A.,
PDV HOLDING, INC.,
PLAINTIFFS-COUNTER-DEFENDANTS-APPELLANTS

v.

MUFG UNION BANK, N.A., GLAS AMERICAS LLC,
DEFENDANTS-COUNTER-CLAIMANTS-APPELLEES

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK (NO. 19-10023)
(THE HONORABLE KATHERINE POLK FAILLA, J.)*

**OPPOSITION TO MOTION TO EXPEDITE APPEAL**

JEFFREY J. RECHER
PAUL A. PATERSON
PAUL, WEISS, RIFKIND,
　WHARTON & GARRISON LLP
　*1285 Avenue of the Americas*
　*New York, NY 10019*

CHRISTOPHER J. CLARK
ANDREW J. RODGERS
BRIAN BURNS
CLARK SMITH VILLAZOR LLP
　*666 Third Avenue, 21st Floor*
　*New York, New York 10017*

KANNON K. SHANMUGAM
MASHA G. HANSFORD
PAUL, WEISS, RIFKIND,
　WHARTON & GARRISON LLP
　*2001 K Street, N.W.*
　*Washington, DC 20006*
　*(202) 223-7300*
　*kshanmugam@paulweiss.com*

**CORPORATE DISCLOSURE STATEMENT**

Appellee GLAS Americas LLC is a wholly owned subsidiary of GLAS USA LLC, which is a wholly owned subsidiary of Global Loan Agency Services Ltd., which is a wholly owned subsidiary of GLAS Holdings Ltd., which is a wholly subsidiary of Unicorn Bidco Ltd., which is a wholly owned subsidiary of Unicorn Midco 2 Ltd., which is a wholly owned subsidiary of Unicorn Midco 1 Ltd., which is a wholly owned subsidiary of Unicorn Topco Ltd. Unicorn Topco Ltd. has no parent corporation, and no publicly held company owns 10% or more of its stock.

Since the commencement of this action, the original trustee, MUFG Union Bank, N.A., merged into U.S. Bank National Association, effective May 26, 2023, with the latter as the surviving entity. U.S. Bank National Association is a wholly owned subsidiary of U.S. Bancorp, Inc. U.S. Bancorp, Inc. has no parent corporation, and no publicly held company owns 10% or more of its stock.

## INTRODUCTION

This appeal, which arises from nearly a decade of litigation and involves billions of dollars of unpaid debt, should not be resolved on an expedited basis. This Court previously remanded the case to the district court, which issued a nearly 90-page opinion, resolving the relevant issues in favor of appellees. Having lost below, appellants now seek to fast-track their appeal, but they provide no persuasive reason for deviating from this Court's usual briefing and oral-argument schedule. Their primary argument relies on ongoing proceedings regarding a judicial sale in the District of Delaware. But the Delaware court is set to approve the sale by November 30—before appellants even propose filing their opening brief in this appeal, meaning that this Court has no reason to rush its standard timeline. And that is especially so when appellants have requested a briefing schedule that is skewed in their own favor and imposes burdens on appellees and this Court. The motion to expedite the appeal should be denied.

## BACKGROUND

### A. The 2020 Bond Issuance And This Litigation

In 2007, appellant Petróleos de Venezuela, S.A. (PDVSA), an oil company owned by the Bolivarian Republic of Venezuela, issued the first in a series of notes totaling more than $9 billion and scheduled to come due in 2017. *See* 106 F.4th 263, 265 (2d Cir. 2024). Over the next several years, various

(1)

credit ratings agencies downgraded PDVSA's rating. In 2016, PDVSA exchanged the 2017 notes for notes scheduled to come due in 2020. *See id.* PDVSA secured the 2020 notes by a pledge from appellant PDV Holding, Inc. (PDVH), of a 50.1% equity interest in CITGO Holding, Inc., the parent of CITGO Petroleum. *See* Civ. No. 19-10023, 2025 WL 2675871, at *3 (S.D.N.Y. Sept. 18, 2025). The indenture, global notes, and pledge agreement governing the 2020 notes and the collateral pledged in connection therewith were approved by the boards of directors of each of PDVSA, PDVH, and appellant PDVSA Petróleo, S.A., as well as by the Republic as PDVSA's sole shareholder. *See id.* at *4.

Nicolás Maduro was the president of the Republic at the time of the exchange, but a coalition of opposition parties controlled the National Assembly (Venezuela's legislature) and criticized the exchange. *See* 106 F.4th at 265-266. Although PDVSA might have defaulted on the 2017 notes if the exchange failed, the National Assembly adopted a resolution in September 2016 criticizing the 2020 notes and purporting to "reject" the pledge of 50.1% of the shares of CITGO Holding. *See id.* at 266. The exchange transaction nevertheless went through, the 2020 notes were issued, and PDVSA made payments on the principal and interest from 2017 through the first half of 2019. *See id.* But in 2019, PDVSA failed to make payment and defaulted. *See id.*

Appellants brought suit in the United States District Court for the Southern District of New York against appellees MUFG Union Bank, N.A., the trustee of the 2020 notes, and GLAS Americas LLC, the collateral agent, alleging that the 2020 notes and the governing documents were "invalid, illegal, null and void ab initio, and therefore unenforceable." 106 F.4th at 266-267 (italics omitted).

The district court granted summary judgment to appellees, holding that the documents governing the 2020 notes were governed by and valid under New York law. *See* 495 F. Supp. 3d 257, 292-293 (S.D.N.Y. 2020). On appeal, this Court certified a choice-of-law question to the New York Court of Appeals to decide whether New York or Venezuelan law governed. *See* 106 F.4th at 267. The New York Court of Appeals determined that assessing the validity of the bonds and governing documents "requires analysis of Article 150 and related provisions of the Venezuelan Constitution." 235 N.E.3d 949, 957 (2024). This Court then vacated the district court's summary judgment order and remanded for further consideration under Venezuelan law and the act-of-state doctrine. *See* 106 F.4th at 270.

The district court gave the parties several months to submit supplemental briefing, expert reports, and evidence regarding Venezuelan law and the act-of-state doctrine. *See* D. Ct. Dkt. 320, at 11. On September 18, 2025, six months after the end of briefing, the district court issued a lengthy and

3

comprehensive opinion holding that the 2020 notes and governing documents are valid under the Venezuelan Constitution and that the act-of-state doctrine does not apply. *See* 2025 WL 2675871, at *11, *29. The district court entered a $2.859 billion judgment in favor of appellees. D. Ct. Dkt. 402, at 2.

On October 24, 2025, five weeks after the district court issued its decision, PDVH moved to stay the judgment during the pendency of the appeal to this Court. *See* D. Ct. Dkt. 408. On November 7, 2025, appellees filed an opposition to that stay request. *See* D. Ct. Dkt. 416. The district court has not yet resolved the motion.

### B. The Ongoing Judicial Sale Of PDVH

PDVSA's ownership of CITGO is in question because of separate proceedings in the United States District Court for the District of Delaware, which address distinct issues from this case. *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, Civ. No. 17-151. *Crystallex* involves $20 billion of unsecured judgments against PDVSA and the Republic by numerous creditors. That case is now in the final stages of a judicial sale of the PDVH shares; after the sale occurs, CITGO Holding will no longer be owned or controlled by PDVSA or the Republic. Appellants and the Republic have opposed virtually all steps in the judicial-sale process over the last several years. *See, e.g., id.*, Dkts. 443, 1138, 1644, 1951-1, 2384.

4

On August 29, 2025, the special master assisting the district court in *Crystallex* recommended a bid by Amber Energy, Inc. (Amber). That bid includes a settlement with over 75% of the holders of the 2020 notes, effectuated through a transaction support agreement. Under that agreement, those noteholders have agreed that at any closing of the Amber bid, they will direct the release of the collateral and sell their then-unsecured notes to Amber, which would then extinguish them. *See Crystallex*, *supra* (Civ. No. 17-151), Dkt. 2123, at 6.

The parties have asked the district court in *Crystallex* to rule on the Amber bid by December 1—which is the deadline under the transaction support agreement for court approval—and the Delaware court has stated that it expects to decide these matters by November 30. *See Crystallex*, *supra* (Civ. No. 17-151), Dkt. 2505.

## ARGUMENT

Appellants have provided no valid basis to expedite this appeal. They primarily emphasize the judicial-sale proceedings in *Crystallex*. But those proceedings are occurring in a separate jurisdiction on an independent timeline and address distinct questions from those at issue here. They do not warrant truncating this Court's ordinary briefing and review process to the detriment of appellees and this Court. The motion to expedite should be denied, and the appeal allowed to proceed in the ordinary course.

A. Contrary to appellants' claims (Mot. 8-9), the *Crystallex* proceedings do not provide a reason to expedite this appeal. To begin with, appellants exaggerate the interplay between the two cases. Appellants complain that "[a]ny transfer of CITGO Petroleum away from PDVSA to another entity as part of a court-supervised sales process should not be made based on disputed debt obligations whose validity has not been conclusively adjudicated." Mot. 9. But the district court in *Crystallex* has already stated that it will issue a decision on the Amber bid without waiting for a resolution of this litigation. That court has made clear that it was "not waiting for" a decision in the Southern District of New York, and that in any event the 2020 notes "will just not have . . . in any unreviewable way been resolved" before its post-sale hearing decision. *See Crystallex*, *supra* (Civ. No. 17-151), Dkt. 2171-1, at 65-66, 203. Thus, even if this Court expedites its briefing and oral-argument schedule, the sale will proceed independently of any decision from this Court. Indeed, the district court in *Crystallex* is expected to resolve the issues around the sale by November 30, a week before appellants propose to file their opening brief on December 8—and *months* before this Court will be in a position to resolve this appeal, even under appellants' proposed schedule.

Appellants endeavor to generate urgency by creating the impression that the sale will be final and unreviewable as soon as the district court in *Crystallex* approves it. That is incorrect: appellants might seek to appeal that

6

decision to the Third Circuit. And because this case is already further along than *Crystallex*—which has not yet been decided, let alone appealed—there is no reason for this Court to cut short its normal briefing and review process in response to the separate proceedings and a future hypothetical appeal. If anything, appellants should seek relief from the district court in *Crystallex* (or the Third Circuit) to the extent that they believe (incorrectly) that those proceedings should await a decision from this Court. Similarly, if appellants believe that there is an "important national interest" against PDVSA losing ownership of CITGO (Mot. 9-10)—and to be clear, the U.S. State Department submission they cite took no position on the merits issues in this case—they may seek to raise that with the Third Circuit too. Otherwise, PDVSA will lose CITGO no matter the outcome of this appeal.

B. Appellants' desire to proceed quickly is not a compelling reason to shortchange appellees or the Court. Tellingly, appellants' proposal puts the brunt of the perceived urgency on appellees and the Court. If appellants seek to proceed more quickly, they can file their own brief on an earlier schedule. *See* Fed. R. App. P. 31; 2d Cir. R. 31.2(a). Appellants have already had almost two months since the district court's decision issued on September 18, during which they could have been drafting their opening brief. But they now seek a schedule that would have their brief due on December 8—over 80 days since the district court's decision was issued and over 50 days since the partial final

7

judgment issued, while leaving appellees only 30 days to respond (during a period that includes the weeks of Christmas and New Year's). Notably, even for cases that meet the criteria for expedition under Second Circuit Rule 31.2(b), each side receives 35 days to file its brief. *See* 2d Cir. R. 31.2(b).

Requiring appellees to brief this case on that breakneck timeline is particularly unjustified here, where the bonds at issue have been outstanding for almost a decade and this litigation has been ongoing for almost as long. And although the merits are ultimately straightforward and plainly support appellees—as the district court held below—appellants' repeated efforts to make this case look "complex" and "difficult" (D. Ct. Dkt. 409, at 19) resulted in the district court issuing an 89-page opinion carefully explaining why the legal questions are answered in appellees' favor. *See* 2025 WL 2675871; D. Ct. Dkt 397. Appellants' claims that the questions in this case are "complex" and "importan[t]" (D. Ct. Dkt. 409, at 19; Mot. 2, 9) are additional reasons for this Court to proceed on its standard timeline rather than rush ahead. Like the district court, this Court should receive the benefit of full, thoughtful briefing on its usual schedule to assist its assessment of the law and the record.[*]

---

[*] In the previous appeal, this Court declined to expedite the briefing schedule when appellants opposed such a request. C.A. No. 20-3858, Dkt. 91, 96. Appellants previously told this Court that there is no reason "to truncate [the] briefing time or to rush this Court's consideration." Dkt. 91, at 1.

8

## CONCLUSION

The motion to expedite the appeal should be denied.

Respectfully submitted,

/s/ Kannon K. Shanmugam

| | |
|---|---|
| CHRISTOPHER J. CLARK<br>ANDREW J. RODGERS<br>BRIAN BURNS<br>CLARK SMITH VILLAZOR LLP<br>  *666 Third Avenue, 21st Floor*<br>  *New York, New York 10017* | KANNON K. SHANMUGAM<br>MASHA G. HANSFORD<br>PAUL, WEISS, RIFKIND,<br>  WHARTON & GARRISON LLP<br>  *2001 K Street, N.W.*<br>  *Washington, DC 20006*<br>  *(202) 223-7300*<br>  *kshanmugam@paulweiss.com*<br><br>JEFFREY J. RECHER<br>PAUL A. PATERSON<br>PAUL, WEISS, RIFKIND,<br>  WHARTON & GARRISON LLP<br>  *1285 Avenue of the Americas*<br>  *New York, NY 10019* |

NOVEMBER 10, 2025

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

    I, Kannon K. Shanmugam, counsel for appellees and a member of the Bar of this Court, certify, pursuant to Federal Rule of Appellate Procedure 27(d) and 32(a)(5), that the attached Opposition to Motion to Expedite Appeal is proportionately spaced, has a typeface of 14 points or more, and contains 1,943 words.

NOVEMBER 10, 2025                                            /s/ Kannon K. Shanmugam  
                                                                            KANNON K. SHANMUGAM